M. KENDALL DAY, Chief
Asset Forfeiture and Money Laundering Section (AFMLS)
MARY BUTLER
Chief, International Unit
WOO S. LEE
Deputy Chief, International Unit
KYLE R. FREENY
Trial Attorney
Criminal Division
United States Department of Justice
    1400 New York Avenue, N.W., 10th Floor
    Washington, D.C. 20530
    Telephone: (202) 514-1263
    Email:  Woo.Lee@usdoj.gov
EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
JOHN J. KUCERA (CBN: 274184)
CHRISTEN A. SPROULE (CBN: 310120)
Assistant United States Attorneys
Asset Forfeiture Section
    312 North Spring Street, 14th Floor
    Los Angeles, California 90012
    Telephone: (213) 894-3391/213) 894-4493
    Facsimile: (213) 894-7177
    Email: John.Kucera@usdoj.gov
            Christen.A.Sproule@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>                v.<br><br>ALL RIGHT TO AND INTEREST HELD OR SECURED BY THE REAL PROPERTY LOCATED IN NEW YORK, NEW YORK, KNOWN AS THE PARK LANE HOTEL,<br><br>           Defendant. | No. CR 16-5370-DSF (PLAx)<br><br>NOTICE OF JOINT MOTION FOR ORDER APPROVING THE COOPERATION AGREEMENT REGARDING THE CONTINUED OPERATION OF THE JOINT VENTURE AND THE MARKETING OF CERTAIN ASSETS;<br><br>HEARING<br>Date: February 27, 2017<br>Time: 1:30 P.M.<br>COURTROOM 7D (1st STREET) |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 27, 2017 at 1:30 p.m., or as soon thereafter as this matter may be heard, in the courtroom of the Honorable Dale S. Fischer, located in the First Street Federal Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California 90012, Plaintiff United States of America and WG Partners 36 CPS LLC, the managing member of Symphony CP (Park Lane) LLC (the "Joint Venture")(collectively the "Parties") will and hereby do jointly move this Court for an Order approving the Parties' Cooperation Agreement Regarding The Continued Operation Of The Joint Venture And The Marketing Of Certain Assets.[1]

The Joint Venture is involved in the development of real property in New York City known as the Park Lane Hotel.  As detailed in the accompanying Memorandum, the basis for this Joint Motion is that this Court's approval of the Cooperation Agreement is critical to facilitate a process that will ensure the continued operation of the Joint Venture and avoid any potential destruction or diminution of the value of the Joint Venture.

This Joint Motion is based on this Notice of Motion, the accompanying Joint Memorandum in Support of the Parties' Joint Motion, the Cooperation Agreement filed under seal, the Affidavit of

---

[1]  The Cooperation Agreement is formally titled "Agreement Regarding Forfeiture of All Interest in Symphony CP (Park Lane) LLC Currently or Previously Held by or For the Benefit of Low Taek Jho."  Other parties who have filed claims are the Jho Low Family (Low Hock Peng, Goh Gaik Ewe, Low Taek Szen, and Low May Lin), Mubadala Development Company PJSC, Fifty Ninth Investment Company LLC, Sixtieth Investment Company LLC, 59th CPS Parking Blocker LLC, and 59th CPS Hotel Blocker LLC.  The potential parties in interest who has not yet filed claims but has been granted extensions to file its claim is Wells Fargo Bank, N.A.

1   Steven C. Witkoff sworn to on December 15, 2016, also filed under
2   seal (the "Witkoff Affidavit"), the Affidavit of Gene Patton sworn to
3   on January 30, 2017 ("the Patton Affidavit"), all of the pleadings
4   and other documents on file in this case, all other matters of which
5   the Court may take judicial notice, and any further argument or
6   evidence that may be received by the Court at the hearing.  A
7   proposed order granting this Joint Motion is submitted herewith.
8        As detailed in Paragraph 24 of the Parties' Joint Memorandum,
9   counsel for the Joint Venture represents that lenders to the Joint
10  Venture have assented to this application for Court approval of the
11  Cooperation Agreement.  As detailed in Paragraph 25, certain
12  potential parties in interest at this time either do not currently
13  consent to this Joint Motion or are unable to take a position without
14  further consultation.  The Parties have filed this Joint Motion in
15  order to ensure that all potential parties in interest (including the
16  party who has not yet filed a claim but has been granted extensions
17  to file a claim) have an opportunity to raise any concerns with the
18  Court.
19  ///
20  ///
21
22
23
24
25
26
27
28

1      This Joint Motion is made following the conferences of counsel

2  pursuant to Local Rule 7-3 which took place on several dates between

3  December 7, 2016 and January 27, 2017.

4  Dated: January 30, 2017              Respectfully submitted,

5                                       M. KENDALL DAY
                                        Chief, AFMLS
6

7                                       EILEEN M. DECKER
                                        United States Attorney
8

9                                          _/s/*John J. Kucera*_____
                                        JOHN J. KUCERA
10                                       CHRISTEN A. SPROULE
                                        Assistant United States
11                                       Attorneys
12
                                        WOO S. LEE
13                                       Deputy Chief, AFMLS
                                        KYLE R. FREENY
14                                       Trial Attorney, AFMLS
15
                                        Attorneys for Plaintiff
16                                       UNITED STATES OF AMERICA
17
   Dated: January 30, 2017              __/s/(per confirmation)_____
18                                       ANDREW LEVANDER
                                        JOSEPH FAZIOLI
19                                       Attorneys for Potential Claimant
                                          SYMPHONY CP (Park Lane) LLC
20

21
   Dated: January 30, 2017              __/s/(per confirmation)_____
22                                       ROBERT GOLD
                                        Attorney for Potential Claimant
23                                         WG PARTNERS 36 CPS LLC

24

25

26

27

28

                                         4

## TABLE OF CONTENTS

DESCRIPTION                                                                        PAGE

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   THE COURT'S JANUARY 10, 2017 MINUTE ORDER......................3

III.  OVERVIEW OF THE PARTIES' JOINT MOTION..........................5

IV.   CONTINUING MANAGEMENT OF THE JOINT VENTURE'S AFFAIRS..........10

V.    RESTRAINING RIGHTS OF THE MANAGING MEMBER TO DECLARE
      DEFAULTS AND EXERCISE RIGHTS TO DILUTE PARTNERS' INTERESTS
      AND ASSIGNMENT OF INTERESTS...................................11

VI.   NO ASSIGNMENTS OF INTERESTS..................................12

VII.  AGREEMENT REGARDING POTENTIAL FUTURE INTERLOCUTORY SALE OF
      THE JHO LOW INTEREST.........................................13

i

## <u>TABLE OF AUTHORITIES</u>

<u>DESCRIPTION</u>                                                              <u>PAGE</u>

**Federal Rules**

Supplemental Rule G(7)(b)(iii).................................. 3, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The United States ("DOJ") and WG Partners 36 CPS LLC ("Witkoff" or "Managing Member"), the managing member of Symphony CP (Park Lane) LLC (the "Joint Venture"), a business joint venture involved in the development of real property in New York City known as the Park Lane Hotel (collectively the "Parties"), file this Joint Memorandum in Support of the Parties' Joint Motion to Approve the Cooperation Agreement Regarding the Continued Operations of the Joint Venture and the Marketing of Certain Assets.  The Parties in their Joint Motion advise the Court of, and seek Court approval for, the Cooperation Agreement between DOJ and the Managing Member dated September 12, 2016.[1]  The Cooperation Agreement provides (1) for the continued management of certain assets, including the Park Lane Hotel, managed by the Joint Venture; (2) a framework for engaging in the complex process of a potential interlocutory sale (subject to the Court's future approval) of the ownership interest in the Joint Venture owned or held by certain legal entities affiliated with Taek Jho Low ("Jho Low"); and (3) for the financial arrangements between the government, the Managing Member, and the Joint Venture, pending and regarding the potential sale of the interest (the "Jho Low Interest") that certain trusts affiliated with Jho Low (the "Low Entities") hold in the Joint Venture.  *See* Exhibit 2 to the previously filed under seal Affidavit of Steven C. Witkoff sworn to on December 15, 2016 (the "Witkoff

---

[1]   The Cooperation Agreement, which was previously filed under seal, is formally titled "Agreement Regarding Forfeiture of All Interest in Symphony CP (Park Lane) LLC Currently or Previously Held by or for the Benefit of Low Taek Jho."  The Cooperation Agreement is Attachment B to this Joint Motion and is filed under seal.

1  Affidavit").[2]

2      On December 23, 2016, the United States submitted an Ex Parte

3  Application for Leave to File Under Seal certain documents related to

4  the Cooperation Agreement and a Sealed Declaration in Support of that

5  Application to Seal. *See* dkt # 85, 86.  The Parties in those December

6  23, 2016, filings were not seeking substantive relief (such as

7  approval of the Cooperation Agreement, approval of an interlocutory

8  sale, or approval of alternative sale procedures).  Rather, the

9  Parties were only seeking leave to file under seal certain documents

10  related to that Cooperation Agreement in anticipation of a subsequent

11  separate public filing that would have sought approval of that

12  agreement based, in part, on those sealed documents.

13      In the instant Joint Motion, the Parties seek to provide

14  material information in support of the Cooperation Agreement not

15  previously presented to the Court and formally seek approval of the

16  Cooperation Agreement while specifically addressing the substantive

17  concerns the Court raised in its January 10, 2017, Minute Order.  *See*

18  dkt # 90.

19      As a threshold matter, the Parties want to emphasize that they

20  **are not** at this time seeking Court approval for an interlocutory sale

21  of the defendant asset.  Rather, the Parties at this time

22  respectfully request only that this Court approve the Cooperation

23  Agreement so as to (1) provide for the continued management of

24

25  _____

26      [2] Although paragraph 1 of the Witkoff Affidavit states that it
   was filed in support of a Joint Stipulation, that is a reference to a
   prior draft filing not ultimately submitted to this Court.  The
27  Parties now (with Mr. Witkoff's permission) submit the previously
   filed Witkoff Affidavit in its entirety in support of the instant
28  Joint Motion.  The Witkoff Affidavit is Attachment A to this Joint
   Motion and is filed under seal.

2

certain assets; (2) establish a framework for commencing the complex process that potentially could result in a future interlocutory sale (a sale that would separately be subject to the Court's future approval); and (3) provide for the interim financial arrangements between the government, the Managing Member, and the Joint Venture, pending a potential future interlocutory sale (again subject to the Court's future approval).  For reasons detailed below, there are urgent reasons why this Court's approval of the Parties' negotiated Cooperation Agreement is critical to facilitate a process that would ensure the continued operation of the Joint Venture and avoid the potential destruction of its value.

**II.   THE COURT'S JANUARY 10, 2017 MINUTE ORDER**

In rejecting the prior application without prejudice, the Court's Order referenced Rule G(7)(b)(iii).  The Parties respectfully submit, however, that Rule G(7)(b)(iii) does not apply at this particular stage in the proceedings and should not preclude the Court's approval of this Cooperation Agreement at this time.  Rule G(7)(b)(iii)'s requirements are triggered in the event that the Parties formally seek the Court's approval for an interlocutory sale that involved alternative sale procedures.  As discussed above, the Parties are not at this time seeking Court approval for an interlocutory sale at all, let alone an interlocutory sale requiring alternative procedures.  As such, Rule G(7)(b)(iii) should not bar the substantive relief the Parties are requesting in this Joint Motion.

Notably, as detailed below in paragraph 24 of this Joint Memorandum, counsel for the Joint Venture represents that the lenders to the Joint Venture have assented to this application for Court

approval of the Cooperation Agreement, and further assent to the Managing Member initiating a process to secure (subject to the Court's future approval) a buyer for the Jho Low Interest. Nonetheless, in order to ensure that all potential parties in interest (including the party who has not yet filed a claim but has been granted extensions to file a claim) have an opportunity to raise any concerns with the Court, the Parties have filed this Joint Motion.

Moreover, to the extent that any other potential interested party has any objection to a future sale of the Jho Low Interest, approval of this Cooperation Agreement would not prejudice such objections in any material way since any potential future interlocutory sale of the Jho Low Interest will require a further application for approval by the Court.  In contrast, failure to approve this Cooperation Agreement at this time will materially diminish and potentially destroy the value of the Joint Venture.

In its January 10, 2017, Minute Order, the Court also questioned whether there was any support for the reasonableness of the fee structures agreed to in the Cooperation Agreement.  As detailed below at paragraphs 21 through 23 of this Joint Memorandum, and in the Affidavit of Gene Patton sworn to on January 30, 2017 (Attachment C to this Joint Motion) ("Patton Affidavit"), the Parties believe that the terms of the Cooperation Agreement are commercially reasonable and necessary to preserve and maintain the value of the Defendant *In Rem* pending the resolution of this forfeiture proceeding.  The Jho Low Interest is a complex asset with a unique market, inasmuch as it involves participation in a high-end real estate development venture that requires significant capital contributions on an ongoing basis.

1  DOJ is satisfied that the Managing Member is uniquely positioned to
2  market the asset and to obtain a proposal for its sale in a manner
3  that maximizes its value.

4      As detailed in the Patton Affidavit, the fee arrangements in the
5  Cooperation Agreement are also reasonable given (1) the Managing
6  Member's prominent position in the commercial real estate market; (2)
7  his continued infusion, directly or indirectly, of capital to keep
8  the Joint Venture functioning; (3) the waiver of the dilution
9  provisions of the Operating Agreement; and (4) the success-based
10  nature of a portion of the fee (subject to a confidential cap), which
11  only comes into play if any ultimate sale price approved by this
12  Court exceeds a confidential floor amount.  Under these
13  circumstances, the Parties respectfully submit that it would be
14  appropriate for this Court to approve the fee structures in the
15  Cooperation Agreement, an agreement which was negotiated at arm's
16  length between the government and the Managing Member.

17  **III. OVERVIEW OF THE PARTIES' JOINT MOTION**

18      In general support of the Parties' Joint Motion, the Parties
19  jointly state as follows:

20      1.  As detailed in this Joint Memorandum and the accompanying
21  Witkoff Affidavit, the Joint Venture is in a precarious legal and
22  financial position.  In order to preserve the value of the Defendant
23  Asset, certain steps must be taken to preserve the operation of the
24  Joint Venture.  The government and the Managing Member of the Joint
25  Venture seek the Court's approval of the Cooperation Agreement in
26  order to protect the public, the investors in the Joint Venture, and
27  the lenders to the Joint Venture, as well as to maximize the value of

28

1  any ultimate sale (subject to the Court's future approval) of the Jho

2  Low Interest.

3      2.    The Cooperation Agreement achieves these goals by

4  permitting the Managing Partner to continue to manage the operations

5  of the Joint Venture and initiate a process to secure (subject to the

6  Court's future approval) a buyer for the Jho Low Interest.  The

7  process of selling the complex and valuable Jho Low Interest will

8  take many months.  Unless the Parties are able to commence that

9  process now, the Joint Venture faces default, loss of financing

10  arrangements, and foreclosure, all at significant detriment to the

11  value of the asset, the people harmed by the alleged crimes, the

12  investors in the Joint Venture, and the lenders to the Joint Venture.

13      3.    On July 20, 2016, DOJ filed the instant action seeking to

14  forfeit the Jho Low Interest.  The vehicle through which Jho Low and

15  the Low Entities first acquired an interest in the Joint Venture is

16  an entity called Symphony CP Investments Holdings LLC; it is also the

17  vehicle through which they continue to participate indirectly in the

18  Joint Venture.  The Verified Complaint for Forfeiture *In Rem* (the

19  "Complaint") alleges that the interest in the Joint Venture held by

20  Symphony CP Investments Holdings LLC (the "Defendant *In Rem*") is

21  subject to forfeiture in its entirety because the monies caused to be

22  invested in the Joint Venture by Jho Low and his brother Low Taek

23  Szen ("Szen Low"), through Symphony CP Investments Holdings LLC, are

24  proceeds derived from or involved in fraud, misappropriation, and

25  other violations of United States and foreign law.[3]

26  _____

27      [3] The Complaint also seeks forfeiture of the interest in the
Joint Venture held (indirectly) by a separate entity called Symphony

28  CP Investments LLC.  Symphony CP Investments LLC is the 100 percent

4.     Symphony CP Investments Holdings LLC owns an 85 percent (85%) interest in the Joint Venture, and the Managing Member holds a 15 percent (15%) interest.  The Managing Member has represented to DOJ that, shortly after capitalization of the Joint Venture, the Low Entities conveyed an approximately 45.3 percent (45.3%) interest in Symphony CP Investments Holdings LLC to Mubadala Development Company ("Mubadala"), an Abu Dhabi sovereign wealth fund.  The Managing Member's understanding is that, under the agreements with Mubadala governing Symphony CP Investments Holdings LLC, the Low Entities are responsible for all Required Additional Capital Contributions due from Symphony CP Investments Holdings LLC and that the Low Entities' percentage interest in Symphony CP Investments Holdings LLC increases and Mubadala's percentage decreases for each dollar contributed by the Low Entities.  As such, Jho Low and the Low Entities recently held approximately 64.5 percent (64.5%) interest in Symphony CP Investments Holdings LLC, which corresponds to an approximately 54.86 percent (54.86%) interest in the Joint Venture.  The Managing Member has further represented to DOJ that the amount of the current Member Capital Account associated with the Jho Low Interest is approximately $245,720,437, before taking into account any defaults and overdue payments to the Joint Venture.[4]

5.     The rights and responsibilities of each of the Joint Venture's investors are governed by a Joint Venture Agreement (the

---

owner of Symphony CP Investments Holdings LLC and is thus another vehicle through which the Low Entities maintain an interest in the Joint Venture.

[4] This total takes into account Low's capital contributions of approximately $380,720,437.75 prior to the Low Entities' capital call default, as well as Low's conveyance to Mubadala of a 45.3 percent (45.3%) interest in the Joint Venture corresponding to approximately $135,000,000.

"JVA").  Pursuant to the JVA, the Joint Venture is funded by periodic capital calls made by the Managing Member to the Joint Venture's partners, including the Low Entities, to pay expenses associated with the Joint Venture's debts, as well other development and maintenance expenses and costs incurred by the Joint Venture.

6.     The Joint Venture secured financing from several commercial lenders in the original amount of $450,000,000 to finance the Joint Venture, including the Joint Venture's acquisition and renovation of the Park Lane Hotel.  Subsequently, the lenders advanced an additional $30,000,000.  Thus, as of October 31, 2016, the total outstanding balance on these loans is $480,000,000.  At present, only the interest on these loans must be repaid on a monthly basis.  On November 1, 2016, the Joint Venture made a monthly interest payment of $3,734,458.09 on these loans.  Apart from paying the interest on these loans, the Joint Venture continues to incur substantial costs and expenses relating to the continued development and renovation of the Park Lane Hotel, including expenses associated with the hotel's continued operation and maintenance, as well as periodic payments regarding the adjoining property which is under contract with an affiliate of the Joint Venture.

7.     Pursuant to the agreements governing Symphony CP Investments Holdings LLC, Jho Low and/or the Low Entities are responsible for all of the Required Additional Capital Contributions due to the Joint Venture from Symphony CP Investments Holdings LLC. As reflected in documents and other information provided to the government by the Managing Member, even before the instant action was instituted, Jho Low and the Low Entities had already defaulted on their financial obligations to the Joint Venture.  Specifically, as

detailed in the Witkoff Affidavit, Jho Low and the Low Entities have failed to make Symphony CP Investments Holdings LLC's Required Additional Capital Contributions since May 20, 2016.

8.   If, as anticipated, Symphony CP Investment Holdings LLC continues to fail to meet capital calls for the Joint Venture, the Joint Venture's ability to finance its business expenses will be substantially jeopardized.  That problem may, in turn, cause the Defendant *In Rem* to depreciate in value substantially during the pendency of this forfeiture action.  Moreover, under the terms of the Joint Venture, the interest of the Defendant *In Rem* in the Joint Venture is subject to dilution for failing to meet capital calls.  In addition, the lenders to the Joint Venture have already issued Reservation of Rights Letters.  *See* Exhibits 3-5 to the Witkoff Affidavit.  Counsel for the Joint Venture has represented to the government that the willingness of existing lenders to forego calling their loans, as well as the prospects for continued financing of the development project, are dependent on the prompt replacement of the Jho Low Interest with a qualified investor or investors meeting appropriate credit standards.  *See* Witkoff Affidavit, ¶¶14-17.

9.   The Parties have entered into the Cooperation Agreement to ensure the continued and orderly operation of the Joint Venture, including the Park Lane Hotel, without unnecessary encumbrance, restraint or injury to the Joint Venture's creditors, employees and bona fide investors.  The Cooperation Agreement sets forth certain procedures intended to preserve the value of the Defendant *In Rem* by setting forth a process under which, subject to the Court's future approval, the Parties will seek to enter into a proposed interlocutory sale of the Jho Low Interest, with the objective of

maximizing the value of the Defendant *In Rem* and protecting the interests of the public, the government, the Joint Venture and all of its investors and lenders.

10.   Whereas the United States seeks forfeiture of all right to and interest in the Joint Venture held or acquired by Symphony CP Investments Holdings LLC, the Parties' Joint Motion seeks approval of a framework for an interlocutory sale (subject to the Court's future approval) only of the interest currently held by Jho Low and the Low Entities, *i.e.,* the Jho Low Interest, although, as detailed below, the other direct and indirect investors have voluntarily indicated their willingness to join in a sale of the entire Joint Venture property.  Likewise, the lenders to the Joint Venture have informed counsel for the Joint Venture that they consent to the commencement of a sales process as promptly as possible.

**IV.   CONTINUING MANAGEMENT OF THE JOINT VENTURE'S AFFAIRS**

11.   Under Article VI of the JVA, the Managing Member is empowered to make all day-to-day business decisions of the Joint Venture, including operating the Joint Venture and the Park Lane Hotel in the ordinary course of business, overseeing all aspects of the development of the Joint Venture's assets, fulfilling the Joint Venture's obligations, and negotiating with third parties, including the lenders and the owner of the adjoining property, on behalf of the Joint Venture.

12.   The Parties agree that, except as expressly stated therein, nothing in the Cooperation Agreement should be construed as limiting the Managing Member's powers and ability to fulfill its responsibilities under the JVA.  Furthermore, nothing in the Cooperation Agreement should be construed as a limitation on the

Joint Venture's ability to conduct business in the ordinary course. Notwithstanding the foregoing, the Managing Member has agreed to cooperate fully with DOJ in recovering any illicit proceeds of crime and providing all information and records as is necessary to accomplish these law enforcement purposes.  To the extent conflicts or disputes arise between the Parties concerning the Cooperation Agreement, the Parties acknowledge that such disputes or conflicts should be resolved by the Court.

**V.   RESTRAINING RIGHTS OF THE MANAGING MEMBER TO DECLARE DEFAULTS AND EXERCISE RIGHTS TO DILUTE PARTNERS' INTERESTS AND ASSIGNMENT OF INTERESTS**

13.   Under the JVA, the Managing Member is authorized to finance the Joint Venture's expenses and operating costs by calling on the Joint Venture's investors, including the Low Entities through the Defendant *In Rem*, to make additional capital contributions ("Required Additional Capital Contributions").  Under the JVA, Jho Low and the Low Entities are required to fund 85 percent (85%) of any Required Additional Capital Contributions called for by the Managing Member.

14.   If, as expected, Jho Low continues to default on the payment of any Required Additional Capital Contribution, the JVA provides that the Managing Member is entitled to dilute the Jho Low Interest in the Joint Venture pursuant to a formula prescribed in the JVA.  Specifically, the JVA provides the Managing Member with the right to dilute the Jho Low Interest by an amount equivalent to 150 percent (150%) of the default amount.  (Sections 2.4(c)(ii) and 1.6).

15.   The Joint Venture's continued need to rely on capital calls to provide working capital from its investors is essential to the continued orderly maintenance and operation of the business.

11

1   Under the Cooperation Agreement, which is subject to Court approval,

2   the Parties have agreed as follows:  the Managing Member has advanced

3   and will continue to advance or cause to be advanced all Required

4   Additional Capital Contributions due from (or that will have come due

5   from) the Defendant *In Rem* to the Joint Venture, assuming that Jho

6   Low continues to default on future capital calls made by the Joint

7   Venture.  The Managing Member has further agreed to relinquish its

8   right to dilute the Jho Low Interest in the Joint Venture pursuant to

9   the JVA in exchange for various rights under the Cooperation

10  Agreement, including being reimbursed for any advances that have been

11  made or will be made in the future on behalf of Jho Low in accordance

12  with the Cooperation Agreement.

13       16.   The Parties have further agreed that the amounts that the

14  Managing Member has advanced or will advance in the future to the

15  Joint Venture in payment of Required Additional Capital Contributions

16  owed by the Low Entities will be treated as loans, which are to be

17  fully repaid to the Managing Member from the gross proceeds of any

18  sale of the Jho Low Interest to a third-party investor.  The Managing

19  Member's reimbursement for each of the loans will include 12 percent

20  (12%) per annum interest, calculated from the date the Managing

21  Member actually advanced, advances, or causes to be advanced the

22  funds until the loan is repaid (principal and interest hereinafter

23  referred to as the "Witkoff Reimbursement").

24  **VI.  NO ASSIGNMENTS OF INTERESTS**

25       17.   Notwithstanding any provisions of the JVA to the contrary,

26  the Cooperation Agreement provides that neither DOJ nor the Managing

27  Member may assign the Agreement or the rights or obligations

28  contained in it.  In the event the Managing Member or Steven C.

Witkoff individually becomes incapacitated or otherwise legally unable to perform under the Agreement, DOJ reserves the right to approve, subject to the Court's future approval, a new managing member for the Joint Venture.

**VII.  AGREEMENT REGARDING POTENTIAL FUTURE INTERLOCUTORY SALE OF THE JHO LOW INTEREST**

18.   Pursuant to Supplemental Rule G(7)(b)(i), this Court possesses the authority to order an interlocutory sale of property that is subject to civil forfeiture prior to any final adjudication of the forfeiture action.  Specifically, the Court may order an interlocutory sale upon any one of the following findings:  1) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action; 2) the expense of keeping the property is excessive or is disproportionate to its fair market value; 3) the property is subject to a mortgage or taxes on which the owner is in default; or 4) the interlocutory sale is supported by other good cause.  Supp. R. G(7)(b)(i).  After a sale is conducted, "[s]ale proceeds are a substitute res subject to forfeiture in place of the property that was sold."  Supp. R. G(7)(b)(iv).

19.   Supplemental Rule G(7)(a) further provides that, "[w]hen the government does not have actual possession of the defendant property the court, on motion or on its own, may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense."

20.   The Parties note again that they are not at this time seeking Court approval for an interlocutory sale of the defendant asset, nor are they seeking Court approval for alternative sales

procedures that would govern such a potential interlocutory sale. Nonetheless, DOJ and the Managing Member agree that the Cooperation Agreement and the pursuit of a sale (subject to the Court's future approval) of the Jho Low Interest on an interlocutory basis to an investor or investors capable of providing additional capital to the Joint Venture are necessary to replace the capital that the Low Interests are no longer providing, to avoid foreclosure by the lenders to the Joint Venture, to take advantage of existing market conditions and favorable financing arrangements, and to preserve the value of the asset, all as described in the Witkoff Affidavit.

21.   The Parties understand that, even if the instant Joint Motion is granted, the terms and procedures of any proposed interlocutory sale of the Defendant *In Rem* must be approved by the Court.   The Parties nevertheless seek approval of the Cooperation Agreement for a framework to begin a process governing a possible interlocutory sale, in recognition of the imminent financial and legal risks to the Joint Venture and the significant amount of time and resources that will be necessary to market the Jho Low Interest, to secure a potential new investor or investors, and to negotiate the terms of such a proposed sale, as set forth in the attached Witkoff Affidavit.   The Cooperation Agreement contemplates a procedure as well as a structure for compensation to be paid to the Managing Member for searching for, evaluating, and presenting the investment opportunity to one or more buyers around the world, providing due diligence, and negotiating an agreement to sell the Jho Low Interest that is acceptable to the Court.

22.   DOJ and the Managing Member believe that the terms of the Cooperation Agreement are commercially reasonable and necessary to

preserve and maintain the value of the Defendant *In Rem* pending the resolution of this forfeiture proceeding. *See generally* Attachment C (Patton Affidavit) and Attachment A (Witkoff Affidavit).  The Jho Low Interest is a complex asset with a unique market, inasmuch as it involves participation in a high-end real estate development venture that requires significant capital contributions on an ongoing basis. DOJ is satisfied that the Managing Member is uniquely positioned to market the asset to potential investors around the world and to obtain a proposal for its sale in a manner that maximizes its value.

23.   The proposed procedures and compensation, which are reflected in the Cooperation Agreement, provide as follows:

(a) The Managing Member has agreed to search for, evaluate, and present the investment opportunity to one or more buyers around the world, provide due diligence, and negotiate an agreement to sell the Low Interest on terms acceptable to the Parties and the Joint Venture's lenders.  The Managing Member has also agreed to provide both DOJ and the Joint Venture's lenders written notice of any firm offer it receives to acquire the Jho Low Interest;

(b) The Parties will seek the Court's approval before any final purchase and sale agreement is executed to liquidate the Jho Low Interest;

(c) The Managing Member shall retain a bona fide third-party broker to aid it in the sale of the Jho Low Interest.

(d) In exchange for the professional services provided, the Parties have agreed on confidential terms to reimburse the Managing Member for its efforts and to pay the fee for the broker in connection with a sale of the Jho Low Interest.

(e) The Cooperation Agreement also provides that the United

15

States may seek the appointment of a Legal/Business Advisor to provide it with business and legal advice regarding the Jho Low Interest and the evaluation of the sale. The Legal Advisor's fees shall be paid solely out of the gross proceeds of the sale of the Jho Low Interest or by the DOJ.

24. Furthermore, the lenders to the Joint Venture (which include Wells Fargo Bank, N.A., Husky Finco, LLC (Blackstone), CRECB Funding III, LLC (Criterion), Athene Annuity & Life Assurance Company and American Equity Investment Life Insurance Company) in conversations and emails with counsel for the Joint Venture, have assented to this application for Court approval of the Cooperation Agreement, and further assent to the Managing Member initiating a process to secure (subject to the Court's future approval) a buyer for the Jho Low Interest. The Parties anticipate that notices of non-opposition to this Joint Motion to that effect will be filed on behalf of these lenders.

25. Counsel for the Joint Venture represents that, at various times, counsel for Jho Low, the Low Family, the prior trustees for the Low Trusts, and Mubadala have all agreed in concept to an interlocutory sale process led by the Managing Member, subject to their review of the terms of the potential sale as well as Court approval. More recently, however, Mubadala has begun to discuss the possible purchase of the Jho Low Interest with various potentially interested parties, subject to Court approval. Accordingly, at this time, at least the Jho Low related potentially interested parties do not consent to this Joint Motion and reserve the right to oppose the motion. Counsel for the new trustees (who very recently took control in mid-January 2017) is at this time unable to take a position

without further consultation.  Nevertheless, given the looming potential defaults with the lenders, the government and the Managing Member strongly believe that Court approval of the Cooperation Agreement is now critical to begin a process that will ensure the continued operation of the Joint Venture and avoid any potential destruction or diminution of the value of the Joint Venture.

26.  Moreover, to the extent that any potential interested party opposes this Joint Motion to Approve the Cooperation Agreement, they will have the opportunity (per Local Rule 7-9) to file and serve any such opposing papers no later than 21 days prior to the February 27, 2017, hearing date noticed in this Joint Motion.

27.  Furthermore, to the extent that any other potential interested party has any objection to a future **sale** of the Jho Low Interest, approval of this Cooperation Agreement will not prejudice such objections in any material way since sale of the Jho Low Interest will require a further application for approval by the Court.  In contrast, failure to approve this Cooperation Agreement at

///
///

1  this time will materially diminish and potentially destroy the value

2  of the Joint Venture.

3  Dated: January 30, 2017          Respectfully submitted,

4                                   M. KENDALL DAY
                                     Chief, AFMLS
5

6                                   EILEEN M. DECKER
                                     United States Attorney
7

8                                   ____/s/John J. Kucera_____
                                     JOHN J. KUCERA
9                                   CHRISTEN A. SPROULE
                                     Assistant United States
10                                   Attorneys

11                                   WOO S. LEE
12                                   Deputy Chief, AFMLS
                                     KYLE R. FREENY
13                                   Trial Attorney, AFMLS

14                                   Attorneys for Plaintiff
15                                   UNITED STATES OF AMERICA

16  Dated: January 30, 2017          ___/s/(per confirmation)_____
17                                   ANDREW LEVANDER
                                     JOSEPH FAZIOLI
18                                   Attorneys for Potential Claimant
19                                     SYMPHONY CP (Park Lane) LLC

20  Dated: January 30, 2017          ___/s/(per confirmation)_____
21                                   ROBERT GOLD
22                                   Attorney for Potential Claimant
                                       WG PARTNERS 36 CPS LLC

23

24

25

26

27

28

                                     18