1  Daniel A. Zaheer (Bar No. 237118)
2  Robin Rathmell (Admitted *pro hac vice*)
   KOBRE & KIM LLP
3  150 California Street, 19th Floor
   San Francisco, California 94111
4  Telephone: (415) 582-4800
5  Facsimile: (415) 582-4811
   E-mail: daniel.zaheer@kobrekim.com
6  E-mail: robin.rathmell@kobrekim.com

7
   Aaron M. May (Bar No. 207751)
8  Grant B. Gelberg (Bar No. 229454)
9  HUANG YBARRA SINGER & MAY LLP
   550 South Hope Street, Suite 1850
10 Los Angeles, California 90071-2604
11 Telephone: (213) 884-4900
   Aaron.May@hysmlaw.com
12 Grant.Gelberg@hysmlaw.com

13
   *Attorneys for Claimants*
14 Low Hock Peng, Goh Gaik Ewe,
15 Low Taek Szen and Low May Lin

16

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. CV 16-05370-DSF-PLA |
| Plaintiff, | ) **CLAIMANTS LOW HOCK PENG,** |
| | ) **GOH GAIK EWE, LOW MAY LIN** |
| v. | ) **AND LOW TAEK SZEN'S** |
| | ) **OPPOSITION TO THE JOINT** |
| ALL RIGHT TO AND INTEREST IN | ) **NOTICE OF MOTION AND** |
| SYMPHONY CP (PARK LANE) LLC | ) **MOTION FOR ORDER** |
| ACQUIRED BY SYMPHONY CP | ) **APPROVING THE COOPERATION** |
| INVESTMENTS LLC AND/OR | ) **AGREEMENT REGARDING THE** |
| SYMPHONY CP INVESTMENTS | ) **CONTINUED OPERATION OF** |
| LLC, INCLUDING ANY INTEREST | ) **THE JOINT VENTURE AND THE** |
| HELD OR SECURED BY THE | ) **MARKETING OF CERTAIN** |
| REAL PROPERTY AND | ) **ASSETS** |
| APPURTENANCES LOCATED AT | ) |

| | | |
|---|---|---|
| 1 | 36 CENTRAL PARK SOUTH, NEW YORK, NEW YORK, KNOWN AS THE PARK LANE HOTEL, ANY RIGHT TO COLLECT AND RECEIVE ANY PROFITS AND PROCEEDS THEREFROM, AND ANY INTEREST DERIVED FROM THE PROCEEDS INVESTED IN THE SYMPHONY CP (PARK LANE) LLC BY SYMPHONY CP INVESTMENTS LLC AND SYMPHONY CP (PARK LANE) LLC,<br><br>          Defendant. | Date:   February 27, 2017<br>Time:  1:30 p.m.<br>Judge:  Honorable Dale S. Fischer<br>Courtroom: 7D |

ii

## I. INTRODUCTION

Claimants Low Hock Peng, Goh Gaik Ewe, Low Taek Szen and Low May Lin ("Claimants") respectfully submit the following Opposition to the Joint Motion for Order Approving the Cooperation Agreement Regarding the Continued Operation of the Joint Venture and the Marketing of Certain Assets, filed by Plaintiff United States of America ("Plaintiff" or "Government") and WG Partners 36 CPS LLC ("Witkoff") (collectively, the "Movants") on January 30, 2017.[1] In filing this Opposition, Claimants expressly join in and incorporate by reference Mubadala Development Company's ("Mubadala") Memorandum in Response to the Joint Motion [Dkt. 103], as well as independently set forth the following.

## II. BACKGROUND

Witkoff functions as the Managing Member of Symphony CP (Park Lane) LLC, a joint venture involved in the development of real property in New York, New York known as the Park Lane Hotel (the "Joint Venture"). Specifically, Witkoff holds a 15 percent (15%) interest in the Joint Venture, while Symphony CP Investments Holdings LLC owns an 85 percent (85%) interest. Symphony CP Investments Holdings LLC, in turn, is jointly held by Mubadala and various entities ultimately controlled by certain trusts, of which Claimants are the beneficial owners. Pursuant to their proposed Cooperation Agreement, Witkoff and the Government now seek approval to undertake the interlocutory sale "of the

---

[1] By filing the instant opposition, Claimants do not waive their argument that the Court lacks jurisdiction in the above-captioned matter. *See* Mot. to Dismiss for Lack of Jurisdiction, dated Dec. 21, 2016 [Dkt. 84]. The Ninth Circuit has repeatedly recognized that defending a case vigorously on the merits does not waive previously asserted jurisdictional objections. *See, e.g.*, *Teyseer Cement Co. v. Halla Mar. Corp.*, 794 F.2d 472, 478 (9th Cir. 1986) (no waiver where party raised jurisdictional defense "as effectively as it could have through a motion to dismiss on that ground"); *Hillis v. Heineman*, 626 F.3d 1014, 1018 (9th Cir. 2010); *S.E.C. v. Ross*, 504 F.3d 1130, 1150 (9th Cir. 2007).

interest currently held by Jho Low and the Low Entities . . ."[2]  *See* Joint Mot. for Order Approving the Cooperation Agreement, dated January 30, 2017 [Dkt. 99] at ¶ 10 ("Mot.").

The proposed Cooperation Agreement is a transparent attempt to circumvent the Court's well-founded Order denying Movants' prior Stipulation for Interlocutory Sale issued on January 10, 2017 [Dkt. 90].  At no point did Movants consult with Claimants or Mubadala as joint venture partners in drafting the proposed Cooperation Agreement, and any claim to the contrary in the Joint Motion is false.  Moreover, as set forth below, the terms of the proposed Cooperation Agreement remain materially unreasonable. By carving out and offering for sale the inaccurately-labelled "Jho Low Interest" in the Joint Venture, as opposed to offering the entirety of assets underlying the Joint Venture, the Cooperation Agreement would fail to maximize the value of the property.  In addition, by seeking to grant Witkoff the authority to unilaterally negotiate a sale of the contested asset, as opposed to appointing an independent third-party broker to lead the process subject to the express approval of all Joint Venture partners, the Cooperation Agreement would provide Witkoff with the opportunity to enrich itself to the detriment of all other interest-holders in the Joint Venture.  For these and other reasons, the Court should deny the Joint Motion.

---

[2] Throughout the Joint Motion, Movants mischaracterize the subject trusts as the "Jho Low Interest," or the "interest . . . that certain trusts affiliated with Jho Low hold in the Joint Venture." *See, e.g.*, Joint Mot. at 1.  To the contrary, pursuant to the Deeds of Exclusion executed on October 21, 2015, Jho Low was removed as a beneficiary to the trusts, and Claimants alone are the beneficial owners.

## III. ARGUMENT

### A. The Court Lacks Jurisdiction to Approve the Proposed Cooperation Agreement

1. <u>This Court Lacks *In Rem* Jurisdiction Over the Joint Venture</u>

It is improper for this Court to consider, much less approve, the proposed Cooperation Agreement, as at no point in their Joint Motion has the Government or Witkoff set forth a viable basis for *in rem* jurisdiction or venue in the Central District of California.

In its Complaint, the Government provides a single, conclusory allegation regarding *in rem* jurisdiction and venue:

> Venue lies in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1355(b)(2) because acts and omissions giving rise to the forfeiture took place in the Central District of California and/or pursuant to 28 U.S.C. § 1395(b), because the Defendant Asset is located in the Central District of California.

Compl. ¶ 16.

As detailed more extensively in Claimants' Motion to Dismiss, the Joint Venture is a Delaware limited liability company formed for the purpose of developing a hotel located at 36 Central Park South, New York, New York (the Park Lane Hotel). *See* Mot. To Dismiss, dated December 21, 2016, [Dkt. 84] at 5 (citing Compl. ¶¶ 2, 417). As such, the Joint Venture is undisputedly not located in this District, and, therefore, the Government and Witkoff are foreclosed from relying upon 28 U.S.C. § 1395(b) as a basis to assert venue. *Id.*

The Government's reliance on 28 U.S.C. § 1355 is similarly misplaced. Section 1355 not only sets the rule for venue but also circumscribes the geographic jurisdiction of the Court. *See Contents of Account No. 03001288 v. United States*, 344 F.3d 399, 403 (3d Cir. 2003); *United States v. One 1978 Piper Cherokee*

3

*Aircraft*, 91 F.3d 1204, 1207 (9th Cir. 1996). It provides in pertinent part that "[a] forfeiture action or proceeding may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). Therefore, jurisdiction only lies if there is a specific geographical nexus between the venue in which the case was brought and the conduct giving rise to the putative forfeiture of the contested asset.

Here, there is no allegation that any individual or entity engaged in any criminal acts or omissions within the Central District of California, and not one cent of the funds purportedly used to purchase the rights and interests in the Joint Venture is alleged to have flowed through the Central District of California. Thus, Movants cannot avail themselves of 18 U.S.C. § 1355(b), as they have failed to provide this Court with any basis to "make clear findings of acts or omissions occurring in th[is] district." *See United States v. Approximately $1.67 Million*, 513 F.3d 991, 998 n.4 (9th Cir. 2008) (citing 28 U.S.C. § 1355(b)).

Because this Court lacks *in rem* jurisdiction over the Joint Venture, it cannot approve any proposed Cooperation Agreement that would seek to manage the Defendant Asset or undertake an interlocutory sale of its ownership interests.

**B. The Terms of the Proposed Cooperation Agreement are Unreasonable**

1. <u>Seeking an Interlocutory Sale Only of the Inaccurately-Labelled "Jho Low Interest" Would Result in a Substantial Diminution in Value to the Joint Venture</u>

According to Movants, "[t]he Cooperation Agreement sets forth certain procedures intended to preserve the value of the Defendant *In Rem* by setting forth a process under which, subject to the Court's future approval, the Parties will seek to enter into a proposed interlocutory sale of the Jho Low Interest, with the objective of maximizing the value of the Defendant *In Rem*." Mot. at ¶ 9.

4

Contrary to such representations, Movants' proposal is ill-advised, and would result in a needless and substantial diminution in value of the Joint Venture.

Movants acknowledge that the Joint Motion "seeks approval of a framework for an interlocutory sale . . . *only of the interest currently held by Jho Low and the Low Entities*." *Id.* at ¶ 10. The Cooperation Agreement's proposal to carve out and offer for sale solely the inaccurately-labeled "Jho Low Interest" is economically unreasonable and would prevent the full sale value of the Joint Venture from being realized. Instead, a sale constituting the entirety of the Joint Venture assets would likely command more interest from prospective buyers, as well as notably higher bidding prices. Tellingly, and as if recognizing the limited value of their own proposal, Movants themselves concede that "the other direct and indirect investors have voluntarily indicated their willingness to join in a sale of the entire Joint Venture property." *Id.*

Therefore, Claimants join in Mubadala's position that a more favorable valuation, and, therefore, a more favorable price, would be realized through the immediate interlocutory sale of the entirety of the assets underlying the Joint Venture. As the proposed Cooperation Agreement would instead limit such a sale to only the interests held by the inaccurately-labeled "Jho Low Interest," thereby resulting in a substantial diminution in value to the Joint Venture, the Court should deny the Joint Motion.

2. <u>An Independent Third-Party Broker Should Be Appointed to Undertake the Sale Process</u>

Pursuant to the terms of the proposed Cooperation Agreement, as Managing Member of the Joint Venture, Witkoff would be imbued with a host of powers extending well beyond those negotiated for and agreed upon in the original Joint Venture Operating Agreement. Most notably, according to Movants, "[t]he Managing Member has agreed to search for, evaluate, and present the investment

1  opportunity to one or more buyers around the world, provide due diligence, and
2  negotiate an agreement to sell the Low Interest on terms acceptable to the Parties
3  and the Joint Venture's lenders." Mot. at ¶ 23(a).

4      At the outset, nowhere does the Joint Venture Operating Agreement provide the Managing Member with such extensive and authoritative powers. To the contrary, the Joint Venture Operating Agreement expressly limits the unilateral transfer or sale of assets or interests in a number of provisions. *See, e.g.*, Operating Agreement at § 6.2(a)(xvi) ("[W]ithout the prior written consent of all Members in each instance (a 'Major Decision'), the Company shall not, and the Managing Member shall not allow the Company (or any Subsidiary, as applicable) to . . . [t]ransfer the Property or any other Company Assets . . . or any part thereof or interest therein, or market or otherwise offer for sale the Property or any other Company Assets or any part thereof or interest therein, except in accordance with the Annual Budget and Business Plan"); § 8.1 ("No Member may Transfer any direct or indirect interest (economic, beneficial or otherwise) in the Company or the Property except as hereinafter set forth in this Article VIII (or as otherwise permitted pursuant to this Agreement) or upon prior written consent of the other Members, which consent may be granted or withheld in the sole and absolute discretion of the other Members.").

    Ignoring the limitations set forth in the Joint Venture Operating Agreement, the Cooperation Agreement instead proposes that Witkoff act as the sole authority in approaching buyers, evaluating proposals, and negotiating agreements. Moreover, Movants "have agreed on confidential terms to reimburse the Managing Member for its efforts." Mot. at ¶ 23(d). Under such proposed conditions, along with already being holder of a 15% interest in the Joint Venture, *see id.* at ¶ 4, Witkoff would be capable of exercising its authority without oversight and enriching itself to the detriment of its fellow interest-holders.

Therefore, in the interest of all the Joint Venture's lenders and interest-holders, Claimants further join in Mubadala's position that such authority should be granted only to an independent third-party broker selected by all of the Joint Venture partners. In turn, the independent broker would undertake a competitive, open bidding process in order to obtain the most favorable price and terms for the assets underlying the Joint Venture. Moreover, each prospective buyer would be assessed subject to the approval of all of the Joint Venture partners. As the proposed Cooperation Agreement instead unilaterally appoints Witkoff, a clearly non-neutral party, to such an undertaking, the terms of the agreement should be considered fundamentally unfair and should be rejected as such by the Court.

## IV. CONCLUSION

For the foregoing reasons, the Joint Motion should be denied for lack of jurisdiction over this action and the Defendant Asset. To the extent the Court finds that it has jurisdiction, the Joint Motion should be denied as materially unreasonable.

DATE: February 6, 2017                     Respectfully Submitted,

                                           KOBRE & KIM LLP

                                           /s/Daniel A. Zaheer
                                           Daniel A. Zaheer
                                           Robin Rathmell

                                           *Attorney for Claimants*
                                           Low Hock Peng, Goh Gaik Ewe,
                                           Low Taek Szen and Low May Lin

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed on February 6, 2017, with the Clerk of the Court using the CM/ECF system thereby sending a notice of electronic filing to all counsel of record, including Assistant U.S. Attorney Woo S. Lee, Deputy Chief, Asset Forfeiture and Money Laundering Section, Assistant U.S. Attorney John J. Kucera, and Assistant U.S. Attorney Christen A. Sproule.

DATE: February 6, 2017          KOBRE & KIM LLP

/s/Daniel A. Zaheer
DANIEL A. ZAHEER